UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHYAM K. CHETAL,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. DEPARTMENT OF INTERIOR, et al.,<br><br>    Defendants. | Case No. 18-cv-03731-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR A VAUGHN INDEX; AND DENYING PLAINTIFF'S MOTION FOR RENEWED DISCOVERY**<br><br>Docket Nos. 22, 35, 41, 43 |

       Plaintiff Shyam K. Chetal has filed suit against the U.S. Department of Interior and the U.S. Bureau of Land Management (collectively, the "agency"), asserting a violation of the Freedom Information Act ("FOIA").[1] According to Mr. Chetal, the agency has failed to respond to a FOIA request he made in October 2017 and further has withheld documents even though no FOIA exemption applies. Defendants moved to dismiss the complaint. The Court subsequently converted the motion to dismiss into one for summary judgment. *See* Docket No. 29 (Order at 2). Mr. Chetal then filed a cross-motion for summary judgment as well as other related motions. Having considered the parties' briefs and accompanying submissions, including the supplemental

---

[1] Mr. Chetal initially sued not only the agency but also agency employees. The Court dismissed the agency employees because no cause of action under FOIA is viable against an individual. *See* Docket No. 29 (Order at 1-2) (citing *Drake v. Obama*, 664 F.3d 774, 785 (9th Cir. 2011) ("We agree with the District Court that FOIA does not apply to any of the Defendants because they are all individuals, not agencies.")).

1 briefing and evidence submitted by the government on March 18, 2009, *see* Docket Nos. 49-50

2 (response and supporting declaration), the Court hereby finds the matter suitable for disposition

3 without oral argument. Both parties' motions for summary judgment are **GRANTED** in part and

4 **DENIED** in part. The Court further **DENIES** Mr. Chetal's related motions for a Vaughn index

5 renewed discovery.

## I. FACTUAL & PROCEDURAL BACKGROUND

7 Based on Mr. Chetal's filings, as well as evidence of which this Court may take judicial

8 notice, the following circumstances led Mr. Chetal to make his October 2017 FOIA request to the

9 agency.

10 On December 3, 2013, an individual by the name of Marian K. Porter filed suit against Mr.

11 Chetal, as well as several companies, in the District of Nevada. *See Porter v. Chetal*, No. C-13-

12 0661 LRH-VPC (D. Nev.). In her complaint, Ms. Porter alleged that she and her husband had

13 owned certain mining claims on approximately 17,000 acres of land located near Ten Sleep,

14 Wyoming. Ms. Porter became the sole owner of the mining claims when her husband died. The

15 land on which the mining claims were staked was owned by the agency. Beginning in or about

16 1986, Ms. Porter and her husband, or Ms. Porter alone after her husband died, paid the annual

17 maintenance fees required by the agency in order to keep ownership of the mining rights.

18 However, Congress significantly raised the maintenance fees for the 2012-2013 registration year

19 as well as all subsequent years, and, because of financial hardship, Ms. Porter could not afford the

20 increased fees (due in September 2013); therefore, in late 2012, she decided to sell the mining

21 claims. *See Porter v. Chetal*, No. C-13-0661 LRH-VPC (D. Nev.) (Docket No. 1) (Compl. ¶¶ 8-9,

22 11-14).

23 According to Ms. Porter, in August 2013, Mr. Chetal offered to buy the Ten Sleep mining

24 rights for $220 million though a holding company. The offer included a down payment of $1

25 million by September 2013, which would be used to pay the maintenance fees for 2012-2013 as

26 well as 2013-2014. *See Porter v. Chetal*, No. C-13-0661 LRH-VPC (D. Nev.) (Docket No. 1)

27 (Compl. ¶¶ 16-18). In connection with the offer, Mr. Chetal "provided documentary proof of his

28 financial ability to pay." *Porter v. Chetal*, No. 3:13-cv-00661-LRH-VPC, 2015 U.S. Dist. LEXIS

13508, at *2 (D. Nev. Feb. 2, 2015); *see also Porter v. Chetal*, No. C-13-0661 LRH-VPC (D. Nev.) (Docket No. 1) (Compl. ¶ 21). Ms. Porter accepted the offer in August 2013. *See Porter v. Chetal*, No. C-13-0661 LRH-VPC (D. Nev.) (Docket No. 1) (Compl. ¶ 19).

"Thereafter, [Mr.] Chetal proffered a check for $276,480 to the [agency] to cover the maintenance fees, but the check was declined twice for insufficient funds and [Ms.] Porter permanently and irrevocably lost all rights to her mining claims." *Porter*, 2015 U.S. Dist. LEXIS 13508, at *3. Ms. Porter alleged in her complaint that none of the defendants "had the financial capability or intention to pay the maintenance fees or purchase the mining claims" and that the defendants "intentionally perpetrated the financing scheme to cause [her] to lose her mining claims, thereby enabling [Mr.] Chetal to purchase the claims directly from the [agency] at a lower price." *Id.*

The Nevada district court granted summary judgment in favor of Ms. Porter – and against Mr. Chetal and one of the defendant companies (on an alter ego theory) – on her claim for breach of contract. *See generally id.*; *Porter v. Chetal*, No. 3:13-cv-00661-LRH-VPC, 2016 U.S. Dist. LEXIS 163574 (D. Nev. Nov. 28, 2016). Subsequently, in March 2017, the court entered a judgment in favor of Ms. Porter in the amount of $200 million, which essentially represented the contract price for the mining rights at issue. *See Porter v. Chetal*, No. 3:13-cv-00661-LRH-VPC, 2017 U.S. Dist. LEXIS 28752, at *3-4 (D. Nev. Mar. 1, 2017); *Porter v. Chetal*, No. 3:13-cv-00661-LRH-VPC, 2017 U.S. Dist. LEXIS 44479, at *7-8 (D. Nev. Mar. 27, 2017).

Mr. Chetal believes that the judgment was wrongfully entered against him. Although not entirely clear, Mr. Chetal's theory seems to be that Ms. Porter "never had a right to attempt to sell the Big Sleep Mine to me" because she was not able to pay maintenance fees due in September 2013 and thus forfeited her ownership rights in the mining claims.[2] Litman Decl., Ex. A (FOIA request).

Mr. Chetal maintains that an agency decision from December 2013 confirms that Ms.

---

[2] Mr. Chetal also suggests that Ms. Porter has engaged in fraud by purporting to still have ownership rights and offering to sell those rights in July 2015. *See* Docket No. 1 (Compl. at 2); *see also* Cross-Mot. at 2 (asserting that, in July 2015, Ms. Porter listed the mine for sale for $250 million).

3

Porter lost her ownership rights. *See* Docket No. 1-5, at 14 (Compl., Ex. 5) (agency decision, dated December 31, 2013) (stating that, "[a]s payment of the annual maintenance fees for 2013 were not paid for the above referenced placer mining claims on or before September 3, 2013, these mining claims are forfeited by operation of law"). Mr. Chetal adds that the agency decision was affirmed during agency appellate proceedings in March 2014. *See* Docket No. 1-5, at 35 (Compl., Ex. 5) (agency appellate decision, dated March 20, 2014) (finding that the agency "properly declared the claims forfeit"). Also, Ms. Porter's attempt to challenge the agency decision through federal proceedings (in the District of Wyoming) was ultimately unsuccessful with Ms. Porter eventually dismissing her appeal to the Tenth Circuit. *See* Docket No. 1-5, at 37 (Compl., Ex. 5) (complaint filed in District of Wyoming in April 2014); Docket No. 1-5, at 50 (Compl., Ex. 5) (docket sheet for District of Wyoming case, indicating that Ms. Porter's appeal was dismissed).

Because Mr. Chetal believes that the $200 million judgment against him (and in favor of Ms. Porter) is invalid, he has tried to vacate that judgment. *See Porter v. Chetal*, No. 17-mc-80068 PJH (N.D. Cal.) (Docket No. 4) (motion filed by Mr. Chetal to vacate the judgment, filed after Ms. Porter registered the Nevada judgment in the Northern District of California).[3] Apparently, as part of his attempt to vacate the judgment, he has sought documents within the possession, custody, or control of the agency.

As noted above, the FOIA request at issue was made in October 2017. *See* Litman Decl. ¶ 21. In the request, Mr. Chetal asked for

> [v]erification of all owners of the Ten Sleep [Gypsum] Mine . . . , including Marian K[.] Porter reflecting specific dates of ownership

---

[3] On April 26, 2018, Judge Ryu declined to address the merits of Mr. Chetal's motion and instead issued an order transferring the case to the District of Nevada. *See Porter v. Chetal*, No. 17-mc-80068 PJH (N.D. Cal.) (Docket No. 10) (Order at 2). Mr. Chetal filed a motion for relief from Judge Ryu's order. *See Porter v. Chetal*, No. 17-mc-80068 PJH (N.D. Cal.) (Docket No. 14) (motion). The case was then reassigned to Judge Hamilton. On June 6, 2018, Judge Hamilton found Mr. Chetal's objection to the order moot: "Defendant cannot seek post-transfer relief in this court because the action is no longer before the U.S. District Court for the Northern District of California. In addition, the U.S. District Court judge assigned the transferred action in the District of Nevada, Judge Miranda M. Du, denied [Mr. Chetal's] motion to vacate the judgment on May 4, 2018." *Porter v. Chetal*, No. 17-mc-80068 PJH (N.D. Cal.) (Docket No. 19) (Order at 1). Mr. Chetal appealed to the Ninth Circuit. On July 19, 2018, the Ninth Circuit held that it lacked jurisdiction over the appeal because the order challenged in the appeal was not final or appealable. *See Porter v. Chetal*, No. 17-mc-80068 PJH (N.D. Cal.) (Docket No. 24) (Order at 1).

>   from January 1[,] 2012[,] through October 30, 2017, including the
>   dates that Marian K[.] Porter lost total ownership in that mine, and
>   dates that Marian K[.] Porter re-acquired ownership in that mine by
>   herself or with other persons or corporations or partnerships,
>   [identifying] dates of changes.

Docket No. 1-1, at 2 (Compl., Ex. A) (FOIA request). It appears that the agency never responded to this request even though receipt of the request was acknowledged.

Subsequently, in late January 2018, Mr. Chetal submitted another FOIA request to the agency. He sought "all documents in [the] Marian K. Porter Appeal resulting in [the] decision of December 31, 2013." Litman Decl., Ex. C (FOIA request). This time the agency responded, producing 833 pages to Mr. Chetal. *See* Litman Decl. ¶ 12 & Ex. D (agency response).

Several months later, in May 2018, Mr. Chetal submitted two FOIA requests to the agency. *See* Litman Decl. ¶¶ 5-6 & Exs. A-B (FOIA requests). In the first request, Mr. Chetal asked in relevant part as follows:

>   Request for "the entire case files" [related to Marian Porter's
>   forfeiture of her mining claims on the Big Sleep Mine in Wyoming].
>
>   First is Marian K[.] Porter owner or has any [ownership] interest in
>   Big [Sleep] Mine now[?] When did Porter re[-]acquire the Big
>   Sleep Mine, and[/]or who are the current owners and who has paid
>   the fees required since 2013?? I request all documents from Bureau
>   of Land Management on this critical issue.

Litman Decl., Ex. A (FOIA request).

In the second request, Mr. Chetal asked "for the official records of the United States Department of Interior that reflect the current owner or owners of the '[Big] Sleep' mine Wyoming and who has paid the fees on that property for the years [2015], 2016, 2017, and 2018[,] including Marian K[.] Porter or her partners." Litman Decl., Ex. B (FOIA request). Mr. Chetal also asked for

>   [c]opies of the decisions of the Bureau of Land Management and
>   Department of Interior that determined Marian K[.] Porter lost all of
>   her interest in the identified parcels enclosed known as Big Sleep by
>   forfeiture because Ms[.] Porter did not timely pay the required fees,
>   before [September] 3[,] 2015.[4]

---

[4] The "2015" date appears to be a typographical error. Presumably, Mr. Chetal meant to refer to the year 2013.

5

> And the appeal to the Tenth Circuit Court of Appeals . . . in which the federal judge dismissed her Department of Interior appeal for repeated failures to comply with the [District] Judge[']s orders and then the [U.S.] Tenth Circuit appeal . . . which Porter dismissed by her attorney Charles Kozak with prejudice on August 12, 2015, confirming that by her dismissal the forfeiture orders above, that she lost the right to sell Big Sleep before September 3[,] 2015 for non[-]payment of fees.
>
> . . . . Copies of [Internet] sales data by Marian K[.] Porter listing for years that she is the sole owner of Big Sleep Mine and offering for sale that property for some two hundred twenty million dollars. . . .
>
> I therefore request any and all information showing Marian K[.] Porter[']s ownership of Big Sleep Mine and all partners she has in your [official] records and the dates she re[-]acquired ownership of Big [Sleep] Mine.

Litman Decl., Ex. B (FOIA request).

"Because the [two May 2018] requests contained similar subject matters and were received within a short time period," the agency aggregated the FOIA requests. Litman Decl. ¶ 9. The agency subsequently learned about the FOIA request from February 2018 and compared that request with the May 2018 requests. "[A]lthough they were not identical[,] they appeared to be seeking the same records, i.e. all records related to Marian K. Porter's IBLA [Interior Board of Land Appeals] case wherein her ownership of the Big Sleep Mine was determined." Litman Decl. ¶ 16.

Because the agency believed that Mr. Chetal had been given all records requested, it decided to contact Mr. Chetal "to seek further clarification . . . regarding what additional document he was seeking." Litman Decl. ¶ 17. The agency emailed Mr. Chetal on June 6, 2018. *See* Litman Decl. ¶ 18 & Ex. G (email). After Mr. Chetal did not respond, the agency sent another email on June 20, 2018, again seeking clarification. *See* Litman Decl. ¶ 19 & Ex. H (email). Because Mr. Chetal still did not respond, on July 6, 2018, the agency "formally closed [his] FOIA requests due to non-response . . . A formal letter was signed and [Mr. Chetal] was notified via email and U.S. mail." Litman Decl. ¶ 20; *see also* Litman Decl., Ex. I (letter).

Mr. Chetal initiated the instant action on June 22, 2018 – *i.e.*, after the second email described above but before formal closure of his FOIA requests. In reviewing Mr. Chetal's

request, the agency learned that, prior to the three FOIA requests described above (one from January 2018 and two from May 2018), Mr. Chetal had submitted a FOIA request in October 2017. *See* Litman Decl. ¶ 21.

As noted above, in the October 2017 FOIA request, Mr. Chetal asked for

> [v]erification of all owners of the Ten Sleep [Gypsum] Mine . . . , including Marian K[.] Porter reflecting specific dates of ownership from January 1[,] 2012[,] through October 30, 2017, including the dates that Marian K[.] Porter lost total ownership in that mine, and the dates that Marian K[.] Porter re-acquired ownership in that mine by herself or with other persons or corporations or partnerships, [identifying] dates of changes.

Docket No. 1-1, at 2 (Compl., Ex. A) (FOIA request).

The agency investigated the October 2017 FOIA request and learned that it had been made "via an online web portal-based system that automatically generates an electronic reply once a FOIA request has been submitted online." Litman Decl. ¶ 22. The agency determined that, "due to an administrative error, the electronic [FOIA] request was not effectively directed to [the agency] for processing." Litman Decl. ¶ 23. The agency then reviewed the FOIA request and concluded that it was "materially the same as the other three FOIA requests" of which the agency had been aware. Litman Decl. ¶ 24. The agency confirmed that all responsive documents had been produced and that "no responsive records were withheld." Litman Decl. ¶ 24. The agency submitted a declaration stating such, in conjunction with the pending motion for summary judgment. *See* Litman Decl. ¶ 24. In the same declaration, the agency maintains that, had it become aware of the October 2017 request prior to the lawsuit, it would have determined that the request was "almost identical to the May [2018] requests, [and thus the agency] would have required clarification [of the October 2017 request] as the request did not adequately describe the records sought by [Mr. Chetal]." Litman Decl. ¶ 24.

## II. <u>DISCUSSION</u>

A. <u>Legal Standard</u>

In the instant case, the agency asserts that dismissal is warranted on the basis of mootness – *i.e.*, all responsive documents have been produced and no documents have been withheld. In the alternative, the agency contends that Mr. Chetal has failed to exhaust his administrative remedies,

1 more specifically, by failing to submit a proper request as required by the relevant agency
2 regulations.

3 For purposes of this decision, the Court need only address mootness. The Court assumes that mootness is an affirmative defense for which the agency has the burden of proof. *See, e.g.*, *Tinoqui-Chalola Council of Kitanemuk & Yowlumne Tejon Indians v. United States DOE*, 232 F.3d 1300, 1303-04 (9th Cir. 2000) (requiring the defendant to prove mootness where an agency's action may have rendered the case moot). Where a defendant moves for summary judgment based on an affirmative defense (*i.e.*, an issue on which it bears the burden of proof), the defendant must establish "all of the essential elements of the . . . defense to warrant judgment in [its] favor." *Martin v. Alamo Cmty. College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003) (internal quotation marks omitted; emphasis omitted); *see also Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1177 (9th Cir. 2006) (noting that a defendant bears the burden of proof at summary judgment with respect to an affirmative defense).

B. <u>Mootness</u>

An issue is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). "Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Ariz. for Official English v. Ariz.*, 520 U.S. 43, 68 n.22 (1997) (internal citation and quotation marks omitted). In a FOIA case, "the production of all nonexempt material, 'however belatedly,' moots [the] FOIA claim[].'" *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 689 (9th Cir. 2012); *see also Rojas v. Fed. Aviation Admin.*, No. CV-15-1709-PHX-SMM, 2017 U.S. Dist. LEXIS 157661, at *5 (D. Ariz. Sep. 25, 2017) (stating that, in a FOIA case, "[a] defendant is entitled to summary judgment . . . when it demonstrates that no material facts are in dispute, that it has conducted an adequate search for responsive records, and that each responsive record that it has located has either been produced or is exempt from disclosure").

As noted above, in the instant case, the agency claims mootness on the basis that it has

produced all responsive documents have been produced and no documents have been withheld. The Court does not agree that all responsive documents have been produced.

In particular, on March 18, 2019, the agency filed supplemental briefing and/or evidence in response to a Court order. *See* Docket Nos. 49-50 (response and supporting declaration). In its papers, the agency stated that "[t]he LR2000 database contains information as to who owned the mining claims at issue in this case for the 2012-2017 time period. This information is publicly available on the internet." Docket No. 50 (Wilson Decl. ¶ 4).

It appears that the information from the LR2000 database (regarding ownership) was not produced to Mr. Chetal. The agency has not specifically claimed that production was unnecessary pursuant to, *e.g.*, 5 U.S.C. § 552(a)(2)(D). *See Lipton v. United States EPA*, 316 F. Supp. 3d 245, 248 (D.D.C. 2018) (noting that "[t]he 1996 Amendments [to FOIA] added to the reading-room provision a requirement that agencies *publish electronically copies* of any records that *already have been released* under the reactive provision of FOIA and that *have attracted or likely will attract* more such requests") (emphasis added); *Renewal Servs. v. United States PTO*, No. 15cv1779 WQH (DHB), 2016 U.S. Dist. LEXIS 85573, at *11-12 (S.D. Cal. June 29, 2016) (noting that "5 U.S.C. § 552(a)(3) specifically provides that the agency need not respond to a § 552(a)(3) request for information when *the same information is indexed and made public pursuant to the guidelines of § 552(a)(2)*") (emphasis added). Nor has the agency claimed that that FOIA does not require production because production would require the agency to "create" records. *Cf. Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 270 (D.D.C. 2012) (noting that "there is a tension between the well-settled prohibition against requiring agencies to conduct research and create records, and the policy of the E-FOIA Amendments to bring the contents of electronic databases within the FOIA's reach"). Accordingly, the Court orders the agency to produce to Mr. Chetal the information from the LR2000 database as to who owned the mining claims at issue in this case for the 2012-2017 time period. The production shall be made within twenty (20) days of the date of this order.

In all other respects, however, the agency has sufficiently shown that it conducted an

adequate search for responsive documents,[5] that it produced responsive documents, and that no documents have been withheld. *See, e.g.*, Docket Nos. 22-1, 44-1 (declarations from Jennifer Litman, addressing adequacy of the search).

### III. CONCLUSION

For the foregoing reasons, both parties' motions for summary judgment are granted in part and denied in part. More specifically, the agency shall produce to Mr. Chetal the LR2000 information identified above. The agency's FOIA obligations are otherwise satisfied.

The Clerk of the Court shall enter a final judgment in accordance with this opinion and close the file in this case.

This order disposes of Docket Nos. 22, 35, 41, and 43.

**IT IS SO ORDERED**.

Dated: March 20, 2019

EDWARD M. CHEN
United States District Judge

---

[5]

> The adequacy of an agency's search under FOIA is reviewed under a standard of reasonableness. *See Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1328 (9th Cir. 1995). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Zemansky*, 767 F.2d at 571 (further quotation omitted). An agency's showing of reasonableness may be established by its filing of reasonably detailed, nonconclusory affidavits submitted in good faith. *Id.* An agency's declarations cannot be rebutted by purely speculative claims about the existence and discoverability of additional documents. *Hamdan*, 797 F.3d at 770-71.

*Rojas*, 2017 U.S. Dist. LEXIS 157661, at *14-15.

10